**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-30420**

---

MAC SALES INC., ET AL,

Plaintiffs,

KENNETH P. CHOINA, SR.,

Plaintiff-Appellant,

VERSUS

E. I. DUPONT DE NEMOURS, AND COMPANY,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(89-CV-4571-N)

---

July 7, 1997

Before REYNALDO G. GARZA, EMILIO M. GARZA, and DeMOSS, Circuit
Judges.

DeMOSS, Circuit Judge:[*]

Plaintiff Kenneth Choina sued defendant E.I. duPont de Nemours

& Co. ("DuPont") for breach of contract. The district court

granted judgment as a matter of law in favor of DuPont after the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

first trial.  We reversed that judgment and remanded the case in *Mac Sales, Inc. v. E.I. du Pont de Nemours & Co*., 24 F.3d 747 (5th Cir. 1994).  The jury in the second trial found for Choina, awarding damages of $11.3 million.  The district court, however, determined that Choina's marketing expert perjured himself.  The district court, pursuant to Federal Rule of Civil Procedure 60(b)(6), vacated the judgment and ordered a new trial.  Choina obtained a favorable jury verdict in the third trial, but the jury awarded him only $176,000.

Choina appeals, arguing that the district court erred in (1) setting aside the second trial, (2) sanctioning him because of his marketing expert's conduct, and (3) lowering his damages for failure to mitigate.  Finding no reversible error, we affirm the judgment of the district court.


## BACKGROUND

Choina claims that DuPont breached its agreement giving him the exclusive right to market a flame resistant fabric manufactured by DuPont.  Specifically, Choina contends that DuPont's improper requirement that he use only approved fabric cutters raised his costs so high that he could not sell the clothes for a profit.

The first jury trial took place in April 1993, with the district court granting judgment as a matter of law in favor of DuPont.  Choina appealed and a panel of our Court reversed, sending

2

the case back for trial. *See **Mac Sales, Inc. v. E.I. du Pont de Nemours & Co**.*, 24 F.3d 747 (5th Cir. 1994).

At the second trial, in June 1995, marketing expert Randolph Trappey testified for Choina. Trappey conducted a market survey which determined that almost the entire market for Choina's clothes existed at a cost of less than the $40 per outfit Choina had to charge if he used DuPont's approved cutters. Exactly how the survey was conducted and how Trappey described the survey to the jury is the main issue in this case.

Trappey testified at trial that he interviewed 500 companies for his survey. This was done by selecting 500 companies which bought fire resistant clothes. He and his research assistant then phoned the safety director at each company, described the clothes and asked how much the company would be willing to pay for such a product. Trappey failed to inform the jury that, of the 500 companies called, he was only able to complete interviews with 100. As Trappey explained after the trial, the act of calling a company, regardless of whether the company answered his questions, was referred to by Trappey as an "interview." Trappey referred to those complete questionnaires as "completed interviews."

During the second trial, Trappey emphasized to the jury that he interviewed 500 companies in coming to his conclusions about Choina's losses. For example, he said, "I might also add that we interviewed in excess of 500 -- we pulled more than 500 people from

3

our 'barrel' when we talked to them." Trappey later said "I think the final number came out to in excess of 580 people actually interviewed throughout the United States."

In support of his claim that 500 people had been interviewed, Trappey produced data sheets showing 500 separate phone calls. During cross-examination, DuPont's counsel showed that of the 36 pages of data sheets, all but nine pages were duplicates. Thus, the data sheets showed only 100 completed interviews.

The jury in the second trial found for Choina and awarded damages of $11.3 million. Following the second jury trial, DuPont filed a motion under Federal Rule of Civil Procedure 60(b)(6)[1] to set aside the verdict on the ground that Trappey falsified his data and perjured himself at trial. The district court required Choina to turn over Trappey's data and allowed DuPont to depose Raoul Rosha, Trappey's research assistant. After a hearing, the district court granted DuPont's motion to set aside the verdict. The district court found clear and convincing evidence that Trappey falsified his data and perjured himself at trial.[2]

---

[1] Federal Rules of Civil Procedure provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for (6) any other reason justifying relief from the operation of the judgment."

[2] The district court stated that:

Mr. Trappey's testimony today highlights the misrepresentation upon which the jury relied. The evidence that Mr. Trappey falsified his data and his report and that he perjured himself is clear and convincing.

4

A third jury trial was held in March 1996. Trappey refused to testify in that trial unless he was granted immunity. Choina used a different marketing expert in this trial and DuPont also used a marketing expert. The jury again found for plaintiff, but awarded only $176,000.

Choina filed a timely notice of appeal.

---

While his methodology may have been correct, he misrepresented his methodology to the jury. While this fraud was not committed with the complicity of Plaintiff or his Counsel, the court nevertheless concludes that Plaintiff has prevailed in this case because of Mr. Trappey's fraudulent testimony.

That not only is the Defendant injured in this event, but the entire judicial system and the Court suffers as a result.

The Court will not allow a verdict founded upon unmitigated fraud to stand.

Mr. Trappey's testimony provided the entire basis for the jury's award. Without Mr. Trappey, there was no evidence of a market for Plaintiff's product. There is no basis for Dr. Wood's testimony.

This case is extraordinary, in that the sole evidence supporting a multi-million dollar verdict is the clearly fraudulent testimony of an expert witness who supplied Defense counsel with fraudulent documents that prevented Defendant from fully presenting its case.

Allowing this verdict to stand would cause substantial injustice. The Court will not sit idly by and allow Mr. Trappey to visit this injustice on the Defendant or the Court. Accordingly, pursuant to Rule 60(b)(6), the Court grants Defendant's motion and the judgment entered in accordance with the jury's answers be set aside.

5

## DISCUSSION

### Rule 60(b)(6) Motion

"We employ an abuse of discretion standard in our review of the district court's denial of Appellant's Rule 60(b)(6) motion." *Pease v. Pakhoed Corp*., 980 F.2d 995, 998 (5th Cir. 1993).  Choina argues that the district court abused its discretion in granting the Rule 60(b)(6) motion for two reasons: (1) Trappey did not perjure himself while testifying, and (2) because DuPont made the strategic choice of attacking Trappey's credibility and sending the

case to the jury, rather than seeking a recess or continuance, it is not entitled to this extraordinary remedy.

Choina contends that Trappey did not lie.  He may not have been as clear as he could have about the difference between interviews and completed interviews, but he did not commit perjury.  He contends that marketing research textbooks support his interview/completed interview distinction.  Choina argues that the only evidence that Trappey lied comes from Rosha, his assistant, who is only a graduate student.[3]  This evidence, he maintains, is

---

[3]  Rosha testified that Trappey asked him how many surveys he had done, to which he responded:

I said, "Well, yes, I remember it was around a hundred."

And he said, 'Well, I told the court 600.'

So -- I mean I -- I didn't know what -- I mean I was silent.

6

insufficient to support a finding of perjury.  Any confusion from his testimony is because of a "testimonial mishap," not perjury.  *See **Bronston v. United States***, 409 U.S. 352, 358 (1973) (discussing distinction between testimonial mishap and perjury).

Choina argues that even if Trappey committed perjury, the verdict should not have been reversed.  He contends that DuPont became aware of the printout error before Trappey testified.  Yet, rather than seek a continuance to try and obtain the correct data, DuPont chose to ambush Trappey with the mistake, trying to make him look like a liar in front of the jury.  Choina asserts that only after this strategy backfired to the tune of $11.3 million did DuPont claim that the verdict should be set aside.  Choina maintains that Rule 60(b)(6) is inappropriate where a party made a "voluntary, deliberate, free, untrammeled choice."  ***Ackermann v. United States***, 304 U.S. 193, 198-201 (1950).  Choina argues that DuPont took a gamble and lost.  A verdict should not be set aside after a party makes a deliberate, although ultimately unsuccessful,

---

And then he said, "No.  What I really meant was that I know you did a hundred, but when I said 600, what I meant was 600 people was [*sic*] contacted.  So did -- did you -- didn't you contact 600?"

So I told him that "Well, I couldn't exactly say 600, but, yes a lot of people were contacted."

But, I mean, again as a -- I was surprised, because the market research people whom you contact are not -- I mean they are not part of -- they don't constitute anything.  Its the same that responds.

choice.

We agree with DuPont that the district court's grant of the Rule 60(b)(6) motion should be affirmed. The district court's perjury finding is a factfinding, which we review only for clear error. *See* **Accura Systems, Inc. v. Watkins Motor Lines, Inc.**, 98 F.3d 874, 876 (5th Cir. 1996). There is ample evidence to support the district court's finding of perjury. First, only nine of the 36 pages of data Trappey gave were original, while the rest were duplications. Second, Trappey testified that the data sheets represented information obtained from over 500 respondents. Only after being confronted did be correct himself and say only 100 interviews were completed. Third, Trappey never explained to the jury the difference between interviews and completed interviews. This shows that he intended the jury to think he received data from over 500 companies. Finally, Trappey's comments to Rosha indicate that he knew he misled the jury when he said he performed over 500 interviews.

It is likely that Trappey is correct in distinguishing between interviews and completed interviews. That is not the issue, though. What matters is that Trappey intentionally misled the jury, leading it to think that he had actually received information from 500 people, when he had only received information from 100 people. The district court determined that Trappey intentionally misled the jury regarding the number of interviews conducted. The

8

district court observed the second trial, as well as the Rule 60(b) hearing, and was in a better position to determine the credibility of the witnesses and the harmful effect of Trappey's testimony. After reviewing the record, we cannot say that the district court's finding of perjury was clearly erroneous.

Choina argues that the district court erred in granting Rule 60(b) relief because DuPont failed to seek a continuance after learning of Trappey's perjury. We disagree. Rule 60(b)(6) motions are appropriate to remedy fraud by a third-party witness.[4] 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2864 at 352–53 (1995) ("WRIGHT & MILLER"). The Supreme Court has stated that Rule 60(b)(6) relief is appropriate only in extraordinary circumstances. *Ackermann*, 304 U.S. at 199; *see also* *Batts v. Tow-Motor Forklift, Co.*, 66 F.3d 743, 747 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1851 (1996). We have said that the district court's Rule 60(b)(6) powers do not provide relief when a party could have, but did not, present evidence at trial. *See* *Government Financial Services v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) ("[W]e have expressly held that a district court's equitable powers under section (b)(6) do not extend to considering evidence that could have been presented at trial." ); *United States v. 329.73 Acres of*

---

[4] Rule 60(b)(3) allows relief from judgments when there is fraud by a party. Wright and Miller have noted that Rule 60(b)(6) provides similar relief when, as in the instant case, the fraud is not by a party but by a third-party witness. WRIGHT & MILLER § 2864 at 353 n.8.

*Land*, 695 F.2d 922, 926 (5th Cir. 1983) ("This clause of the Rule provides a grand reservoir of equitable power to do justice in a particular case, but that well is not tapped by a request to present evidence that could have been discovered and presented at trial through the exercise of due diligence.") (internal quotation omitted); WRIGHT & MILLER § 2864 at 370 (Rule 60(b)(6) motion should be denied when "the movant made a fair and deliberate choice at some earlier time not to move for relief.").

After reviewing the record, we are convinced that DuPont took appropriate steps after learning of Trappey's perjury. DuPont learned that the computer printout contained duplications only hours before Trappey testified. Rather than seeking a continuance, DuPont chose to vigorously cross-examine Trappey on the duplications. Given the circumstances of this case, we cannot say that DuPont waived its right to Rule 60(b)(6) relief by not seeking a continuance and instead cross-examining Trappey about his perjury. DuPont's choice to try and expose the perjury and hope the jury disbelieved the witness is not the complete failure to present evidence of which the *Peyton Place* Court spoke. *Peyton Place*, 62 F.3d at 774.

**Sanctions**

The district court sanctioned Choina by (1) tolling pre-judgment interest between the second and third trials and (2)

10

awarding DuPont reasonable costs incurred because of Choina's new marketing expert. Choina argues that the prejudgment interest tolling was inappropriate because it gave DuPont a windfall. During the time between the two trials, DuPont kept the money it ultimately paid Choina, earning interest the whole time. Any increase in prejudgment interest because of the delay did not harm DuPont, because the interest was money it would not have earned but for the delay. Choina contends that the award of costs is improper because it is not justified under 28 U.S.C. § 1920 (the costs statute) or Rule 54.

A district court has inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993) (*quoting* **Link v. Wabash R. Co**., 370 U.S. 626, 630 (1962)), *cert. denied*, 510 U.S. 1073 (1994). We have recognized that district courts' inherent power "is not a broad reservoir of power, . . . but a limited source. . . ." *NASCO, Inc. v. Calcasieu Television & Radio, Inc*., 894 F.2d 696, 702 (5th Cir. 1990), *quoted with approval and aff'd*, 501 U.S. 32, 42 (1991). Nonetheless, we are persuaded that the district court did not abuse its discretion in sanctioning Choina under its inherent power by tolling the running of pre-judgment interest and awarding DuPont its costs incurred because of Choina's new marketing expert.

11

**Mitigation of Damages**

In its charge in the third trial, the district court asked the jury whether Choina failed to mitigate his damages. The jury answered in the affirmative, lowering the verdict by 10%. Choina argues that the district court erred in including an instruction and interrogatory on mitigation, because there is no evidence in the record of failure to mitigate.

Choina also complains that the district court erred in using a comparative fault method of determining mitigation. Specifically the district court inquired as to "what percentage [did the jury] find that the damages . . . were caused by the plaintiff's failure to mitigate his damages. . . ." The proper inquiry, Choina contends, is by what dollar amount he failed to mitigate. Choina cites no law for this proposition.

When reviewing jury instructions, we examine whether the charge as a whole creates substantial doubt as to whether the jury has been properly guided in its deliberations. *See Davis v. Avondale Indus., Inc.*, 975 F.2d 169, 174-75 (5th Cir. 1992). After reviewing the record, we have no such doubt. DuPont presented evidence of Choina's failure to mitigate damages, and under Louisiana law contract damages are to be reduced for failure to mitigate. *See Stanley v. Guy*, 442 So.2d 579, 581 (La. Ct. App. 1983).

Likewise, the district court did not err in using a percentage

12

rather than a dollar amount in its failure to mitigate interrogatory. Under Louisiana law, failure to mitigate is the equivalent of comparative fault. *See **Thibaut v. Thibaut***, 607 So.2d 587, 614 (La. Ct. App. 1992) (Gonzales, J., concurring) ("Mitigation of damages is the functional equivalent of comparative fault within the framework of a damage claim for breach of contract."). Therefore, a percentage decrease in recovery is not inappropriate.

Additionally, once the jury has found damages, there is no real difference between asking that the jury find a specific dollar amount as opposed to a percentage of a known amount. After the jury had determined that damages were $140,000, its finding that the damages resulting from failure to mitigate were 10% of $140,000 was the same as the jury finding that the damages resulting from the failure to mitigate were $14,000. The only difference is who performs the mathematical calculation, the judge or the jury.

## CONCLUSION

After reviewing the record and briefs, we are convinced that the district court committed no reversible error. Accordingly, the judgment of the district court is **AFFIRMED**.

13